The Greensburgh, Milford, and Hope Turnpike Company *v.* McCormick, and Powell *v.* McCormick et al.

Turnpike.—*Mortgage.*—*Construction of Statute.*—Under the provision of the statute (1 G. & H. 479, sec. 21), that a turnpike company may borrow money to be used in the construction of its road or in paying for materials purchased for its construction, and may mortgage its road to secure the payment of the money so borrowed, such company may mortgage its road to secure the payment of money due a contractor for constructing the road.

Same.—A turnpike company may mortgage any portion of its road as well as the whole of it.

Same.—*Power.*—A power given by the board of directors to the president

of a turnpike company to mortgage the entire road authorizes a mortgage of a part of the road.

From the Bartholomew Circuit Court.

*S. Stansifer*, for appellants.

*W. W. Herod* and *F. Winter*, for appellees.

BUSKIRK, J.—The questions in the above cases are the same, and will be considered together.

In the first case, the action was for the foreclosure of a mortgage executed by appellant on a part of its road.

In the other case, Powell, one of the stockholders of the turnpike company, sought to enjoin a sale under the decree of foreclosure in favor of McCormick.

The complaint in the first case alleged, in substance, that prior to the execution of the note and mortgage upon which the action was based, the appellant was engaged in the construction of a gravel road from Greensburgh, in Decatur county, to Hope, in Bartholomew county; that McCormick was one of the contractors for the construction of a portion of such road; that appellant agreed, from time to time, as the work progressed, to pay appellee moneys on account of the work performed and materials furnished by him; that appellee performed his contract, which amounted to one thousand two hundred dollars, no moneys having been paid or advanced to him by the company; that on the 20th day of August, 1870, the company having reduced the debt to one thousand and seven dollars, executed its note to McCormick for that amount at one day; that on the 12th day of August, 1871, the company, by its president, executed to appellee a mortgage on a part of the road, to secure the payment of the note. The mortgage was filed with the complaint, from which it appears that it embraced that portion of the road in Bartholomew county, being six or seven miles; the entire distance of the road being about twenty-six miles. The mortgage also set forth the authority of the president to execute the same, which is as follows:

" August 12th, 1871. On motion of Wm. L. Perry, sec-

onded by H. G. Wooley, it was ordered that the president mortgage the road to the creditors of said road, to secure them in their claims against said company."

The defendant filed written motion as follows :

" The defendant moves the court to strike from said amended substituted complaint the mortgage and the averments relative thereto and the prayer for foreclosure of said mortgage, because,

" 1. The defendant had no power to mortgage said road of defendant or any portion thereof, to secure the debt mentioned and described in the complaint.

" 2. The defendant had no legal right to mortgage that portion of said road described in the mortgage ; the power conferred upon the corporation being to mortgage the whole road, and not a part thereof.

" 3. Under the order of the board of directors, as set forth in the complaint, the president had no authority to mortgage a part or fraction of defendant's road."

The motion was overruled, and defendant excepted.

The defendant answered in two paragraphs; the first averring that defendant's road, when said mortgage was executed, was completed from Greensburgh to Hope, a distance of twenty-six miles; and, second, that said president never had any right or authority to execute said mortgage, other than that set forth in the mortgage itself.

Demurrers were sustained to each paragraph of the answer, and the appellant excepted.

Three questions are argued by counsel for appellant, and they are :

1. Could the company mortgage its road to secure a debt of the character described in the complaint ? In other words, can a turnpike company mortgage its road to secure any indebtedness other than for borrowed money to aid in the construction of its road ?

2. Can a turnpike company mortgage a part or fraction of its road ?

3. Had the president of the company the power, under the authority conferred upon him, to mortgage a portion of the road only?

It is provided by statute that a turnpike company may borrow money to be used in the construction of its road, or in paying for materials purchased for its construction, and may mortgage its road to secure the payment of the money so borrowed. 1 G. & H. 479, sec. 21. The evident purpose of the legislature was to assist such companies in the construction of their roads. The present case does not come within the letter of the statute, but in our opinion it is within the spirit and purpose of the enactment. The appellee, under a contract with the appellant, constructed, with his own means and in reliance upon the promises of the company to advance money, a portion of its road. The company accepted the work, and instead of paying in money, gave its note and a mortgage on a part of the road to secure its payment. The appellant was indebted to the appellee for materials furnished and work done in the construction of its road. It is conceded that the appellant might have borrowed money of any other person to pay appellee, and might have mortgaged its road to secure the money so borrowed. We are unable to discover any valid reason why the appellant might not mortgage its road to the appellee to secure a debt created for its construction. Practically and in legal effect, it amounts to the same thing, as mortgaging the road to secure money borrowed to pay for the construction of the road. We think the appellant had the power under the statute to mortgage its road to secure the debt due the appellee. See sections 21 and 22 of the act of May 12th, 1852, 1 G. & H. 479. Counsel for appellant has presented some very strong reasons against the policy and expediency of a railroad or turnpike company mortgaging a part of its road, which, in the absence of a statute on the subject, would have great weight with us; but as it is expressly provided by positive law that such companies may mortgage "the whole or any portion of their road and its appurtenances," we shall have to be governed by the stat-

ute.  See Act of March 5th, 1859, 1 G. & H. 489.  The above recited act was amended during the session of 1867, but so much of it as authorizes the mortgaging of "a portion of the road and its appurtenances" was re-enacted and continued in force.  See Acts 1867, p. 170.

On the 14th of February, 1859, 1 G. & H. 521, the legislature passed an act amending the first section of an act approved February 5th, 1852, by which railroad, plank road turnpike road, and macadamized road companies and all companies organized for the manufacture of railroad or other iron, gas and bridge companies, are authorized to borrow money and to secure the repayment thereof by mortgage. The principal purpose of the amendment was to include the manufacturing companies named.  This act does not in terms authorize the mortgaging of a portion of the road, but in our opinion it would not repeal by implication the act of March 5th, 1859, if that act had not been amended.  But whatever doubt may have existed on that subject is removed by the act of 1867, in which the power to mortgage the whole or any portion of the road is re-enacted.

In our opinion, the appellant had full power to mortgage a portion of its road.

It is, however, contended by counsel for appellant, that conceding that the board of directors might have authorized the president to mortgage a portion of the road, they, in fact, authorized him to mortgage the whole of the road, and consequently did not confer on him power to mortgage only a portion of the road.

In our opinion, the argument is unsound.  We think the power to mortgage the whole road carried with it the power to mortgage a portion of the road, if the creditors were willing to accept a mortgage of a part, instead of the whole. Nor do we see how the appellant can justly complain of the action of its president.  If the authority conferred had been to mortgage a part, and the president had mortgaged the whole road, the appellant might be heard to say that the

president had exceeded his authority.    Angell & Ames Corp., 9th ed., p. 160.

We have not, in view of the statutes above cited, found it necessary to enquire and determine how far the right of the appellant to mortgage its road existed independent of our statute.    As to the common law powers of a corporation to mortgage its property, see Angell & Ames Corp., secs. 187–192, pp. 158–165, 9th ed.

We see no error in this case.    It necessarily and unavoidably results that if the appellant possessed the power to execute the mortgage in question, and if the proceedings in the action to foreclose the mortgage were regular and legal, Powell, as a stockholder, had no right to enjoin a sale upon such foreclosure.    The court below sustained a demurrer to the complaint of Powell, and this ruling is assigned for error.    We think the ruling was correct.

The judgments in both of these cases are affirmed, with costs.